UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHONDRA T. JOHNSON, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-3606 |
| § | |
| PRAIRIE VIEW A&M UNIVERSITY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

The plaintiff, Chondra T. Johnson, sues her former employer, Prairie View A&M University ("PVAMU"), claiming that her termination violated the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.[1] Pending before the Court is PVAMU's motion for summary judgment (ECF Nos. 38, 44), which Johnson opposes (ECF No. 43). Having reviewed the parties' submissions, the record, the undisputed facts and the applicable law, the Court determines that PVAMU's motion should be GRANTED.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In January 2011, Dr. Miron Billingsley, Associate Vice President of Student Affairs at PVAMU, hired Johnson as Director of the Recreational Sports unit within Student Affairs. Dr. Billingsley was Johnson's immediate supervisor. As Director of Recreational Sports, Johnson was one of ten director-members of the Student Activities Leadership Team ("SALT"). According to PVAMU, all of the other SALT team directors were female, with the exception of Steven Ransom.

---

[1] Johnson's claims under the Texas Workers' Compensation Act and the Family and Medical Leave Act were dismissed pursuant to the Court's order on January 9, 2015 (ECF No. 34).

Paragraphs 11 and 12 of the complaint state that during the initial months of her employment, Dr. Kendall Harris, Dean of PVAMU's Engineering Department and an alleged friend of Billingsley, approached her about having an extra-marital relationship, which Johnson rejected in March 2011.[2] Johnson admits that she did not complain to anyone about the incident. Johnson claims that after she rejected Dr. Harris' advances, Dr. Billingsley became "increasingly hostile" towards her and subjected her to "multiple acts of gender-based harassment, retaliation, hostile work environment, unprofessionalism and discriminative communications and actions." As stated in the complaint, Johnson draws this conclusion from the following events: Dr. Billingsley (1) took unjustified disciplinary action against her based on the mistaken belief that she failed to properly request vacation time; (2) referred to her as a "con-artist" and "swindler" in communications with his supervisor, Dr. Loretta Byars (June 2011); (3) attempted to get her fired for having taken personal days off to attend a training (November 2011); (4) gave her a low annual performance rating based on falsified facts to prevent her from qualifying for a merit pay increase (January 2012); (5) "aggressively ordere[d] [her] to look at his buttocks as he turned around, raised up his jacket and touched his buttocks" in response to complaints she had made to Dr. Byars about his treatment of her (Spring 2012); and (6) made remarks about fluctuations in her weight and acne she had developed. Dr. Billingsley reportedly warned Johnson that he would make things difficult for her if she did not resign.

The record shows that in August 2012, Johnson was suspended for five days for purported performance failures that had been recurring. These failures included failing to report to work, being unreachable during normal business hours, arriving late to meetings, changing the operating hours of the campus recreational center without authorization, and instructing a

---

[2] At her deposition, however, Johnson testified that Dr. Harris approached her "within [her] first six months at PVAMU, May-ish" and that "[she] put the lid on it [his overtures] . . . around May, 2011."

subordinate to falsify her timesheet. The parties dispute whether these predicate events occurred. After her suspension, Johnson allegedly committed another infraction related to approving inaccurate timesheets. Thereafter, in February 2013, Johnson was rated "below expectations" or worse in eight of the 14 categories listed on her 2012 performance review. According to PVAMU, her poor performance ultimately led to her termination on April 30, 2013.

Johnson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 24, 2013, reciting the above allegations. Based on these allegations, she asserted that PVAMU discriminated against her because of her gender and retaliated against her for "refusing the sexual advances from Dr. Billingsley's best friend [Dr. Harris]." Her EEOC complaint also includes her conclusion that "Dr. Billingsley promptly fired me as soon as he felt, and Dr. Byars approved that I was disposable" upon receiving state approval, on March 27, 2013, for building a new recreation center on PVAMU's campus. After investigating her claims, the EEOC dismissed the charge and issued a "right to sue" letter. Johnson subsequently filed the instant lawsuit.

The complaint states three causes of action, only two of which remain for this Court's consideration: gender discrimination[3] and retaliation under Title VII. Regarding discrimination, Johnson alleges that PVAMU "interfere[ed] with [her] performance of her employment because of her gender" and that "[t]his intentional interference consisted of discrimination of a continuous nature," causing her to lose wages, benefits and various privileges of employment. Her retaliation claim states that "[a]fter rejecting [Dr. Harris'] sexual advances, [she] was

---

[3] Although the cause of action is titled "Sex Harassment and Discrimination Pursuant to Title VII," the allegations state a claim only for gender discrimination.

subsequently and repeatedly harangued, disciplined, sabotaged, and ultimately terminated."[4] She claims that she was treated in this fashion because she opposed and complained of gender discrimination. PVAMU now moves for summary judgment on both claims.

### III. CONTENTIONS OF THE PARTIES

PVAMU argues that Johnson cannot establish a prima facie case either for gender discrimination or retaliation. It claims that Johnson's discrimination claim is time-barred because she did not file her charge with the EEOC within 300 days of the discrete acts that form the basis of her claim. As understood by PVAMU, these acts are the poor performance reviews filed against her for 2011 and 2012 and her suspension in August 2012. On the merits, PVAMU argues that Johnson's testimony and averments by PVAMU's Director of Human Resources confirm that the three male comparators Johnson has identified—Orok Orok, Assistant Director of Student Activities, Lee Gillian, Coordinator of Intramural Sports in the Recreational Sports unit, and Steven Ransom, former Director of Student Activities—were not similarly situated to her in terms of job responsibilities and disciplinary history. PVAMU also contends that the conduct that Johnson describes as harassing, including her 2011 performance review, does not constitute adverse employment action within the meaning of Title VII.

According to PVAMU's understanding of Johnson's gender discrimination complaint, the factual basis for the claim is her allegation that she was sexually harassed by Dr. Harris. Based on this understanding, it contends that Johnson cannot establish that she participated in an activity protected by Title VII because she admits to not having reported Dr. Harris' conduct to anyone at PVAMU, as required by the statute. This admission, PVAMU argues, also negates any causal link between Johnson's alleged rejection of Dr. Harris in the spring of 2011 and her

---

[4] To the extent that Johnson's deposition testimony raises a claim for hostile work environment based on Dr. Harris' alleged advances towards her, the Court will not consider it, nor will it address summary judgment arguments related to it, because the claim does not appear in the complaint.

termination in April 2013. To the extent that Johnson raises other factual theories of discrimination in interrogatories and at her deposition, PVAMU challenges them as time-barred and not actionable in any event.

Finally, PVAMU asserts that even if Johnson has met her initial burden of proof, it had legitimate, non-discriminatory reasons for terminating her based on repeated performance failures: her suspension in August 2012 and subsequent infractions/failures memorialized in her 2012 performance review. The record includes documentation reflecting these events. Notably, PVAMU claims, Johnson has, in this litigation, admitted to most of the infractions that led to her poor review.

In defense of her claim of gender discrimination, Johnson compares herself to Ransom, who remained employed by PVAMU even though, she contends, he committed similar work infractions, and Gillian, a male who replaced her upon termination. She cites her own affidavit and responses to PVAMU's interrogatories to substantiate these assertions. Regarding retaliation, Johnson responds that she participated in protected Title VII activity by repeatedly complaining about ongoing inequities she experienced in the terms of her employment. Johnson further contends that her affidavit establishes the required causal connection between her protected activity and her termination.

## IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party that fails to make a sufficient showing of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing [the Court] of the basis for its motion" and identifying

those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *see Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV.** P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine

issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Id.* (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.   ANALYSIS AND DISCUSSION

The Court grants PVAMU's summary judgment motion in its entirety. In Title VII employment discrimination cases like the pending one, discrimination may be proven through either direct or circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where the plaintiff produces no direct evidence[5] of discriminatory intent, a court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v.*

---

[5] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

*Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

Employing that framework, the Fifth Circuit has stated:

[A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (emphasis, citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Like disparate treatment cases, unlawful retaliation cases under Title VII are subject to the same burden-shifting analysis. *Haynes v. Pennzoil Co.,* 207 F.3d 296, 299 (5th Cir. 2000).

"[A] plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that [gender] was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)

(overruled on other grounds)). Here, even if Johnson timely filed her EEOC charge and could meet her prima facie burden with her own, self-serving assertions of retaliatory or discriminatory conduct, PVAMU has come forward with evidence that it had legitimate, non-discriminatory and non-retaliatory reasons for terminating her. Johnson has not refuted her suspension or 2012 performance review with any competent evidence to show that the proffered reasons for termination were pretextual and that gender was a determinative factor in her firing. Because evidence is lacking to meet Johnson's ultimate burden of persuasion, the Court must enter summary judgment for PVAMU.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the PVAMU's motion for summary judgment is GRANTED.

It is so **ORDERED**.

SIGNED on this 12th day of May, 2015.

_____
Kenneth M. Hoyt
United States District Judge